UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MERLE PIERCE, | ) |
| | ) |
|     *Plaintiff* | ) |
| | ) |
| v. | )   No. 1:10-cv-242-JAW |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|     *Defendant* | ) |

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") appeal raises the question of whether the commissioner supportably found the plaintiff capable of performing work existing in significant numbers in the national economy as of his date last insured, December 31, 1994. I recommend that the decision of the commissioner be affirmed.

This case returns to this court in the wake of a 2009 order granting the government's motion for remand for further consideration by the Decision Review Board ("DRB") of Veterans Administration ("VA") medical records and a VA disability decision. *See* Record at 489. An accompanying amended judgment remanded the case "for rehearing and further administrative action." *Id*. at 488. By decision dated May 1, 2010, the DRB affirmed the administrative law judge's findings after expressly considering, and according little weight to, an August 2, 1994, VA disability decision. *See id*. at 496-99.

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on June 15, 2011, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 405.101 (incorporating 20 C.F.R. § 404.1520); *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge had found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 1994, Finding 1, Record at 6; that, through his date last insured, he had a severe impairment of asthma, Finding 3, *id.*; that, through his date last insured, he retained the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 404.1567(c), except that he could not work in concentrated exposure to excessive levels of respiratory irritants, such as dust, odors, and dampness, Finding 5, *id.* at 7; that, through his date last insured, considering his age (49 years old, defined as a younger individual, as of his date last insured), education (at least high school), work experience (transferability of job skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id.* at 9; and that, therefore, he had not been disabled, as defined in the Social Security Act, at any time from August 2, 1994, his alleged onset date of disability, through December 31, 1994, his date last insured, Finding 11, *id.* at 10.

On remand, the DRB addressed the VA disability pension awarded to the plaintiff on August 2, 1994, stating:

> The VA award states that it is based on an examination dated May 12, 1993, from the VA Medical Center TOGUS; a report covering treatment from December 22, 1977, to August 18, 1978, from R. Girard, PA/C; and a report of hospitalization from November 28, 1977, to November 18, 1991, from Reddington Fairview Hospital. The evidence on which the VA determination was made is included in the record that was before the Administrative Law Judge and the hearing decision indicates that these records were considered. The [plaintiff] has a history of asthma. Records from R. Girard, PA/C, and Dale Slagel, M.D., indicate that the [plaintiff's] asthma was thought to be aggravated by his environment, which included smoking and a cat. In April 1978, the [plaintiff] was having a period of chronic asthma which eventually resolved. The [plaintiff]] had a recurrence of asthma problems in August 1978. The [plaintiff] fell in May 1982 and injured his

> right shoulder. X-ray of the right clavicle showed osteoarthritis. The [plaintiff] fell and injured his back in December 1990. X-ray of the lumbosacral spine showed a fractured transverse process of L2 on the right and degenerative disc disease at L2 through L4 levels. An audiological evaluation on May 12, 1993, indicated that the [plaintiff] had high frequency hearing loss. This evidence all predates the [plaintiff's] alleged disability onset date. Pulmonary function studies done October 3, 2004, indicate that the [plaintiff] achieved an FEV1 of 2.49 pre-bronchodilator, and 2.70 post-bronchodilator. MVV was 49.21 pre-bronchodilator and 65.07 post-bronchodilator. The assessment was that there was no restriction and only mild obstruction. Pulmonary function studies done May 11, 1997 (after the date the [plaintiff] last met the disability insurance status requirement) yielded an FEV1 of 1.57 with no post-bronchodilator readings. The assessment was moderate obstruction, mild restriction, normal TLC and moderate air trapping.
>
> Upon consideration of the VA determination and the medical evidence upon which it was made, the Decision Review Board accords little weight to the VA finding that the [plaintiff] is "unable to secure and follow a substantially gainful occupation due to disability." The VA's decision provides very limited rationale to explain the basis for the award and did not employ the evaluation criteria prescribed by 20 CFR 404.1501ff. Moreover, the statement that the [plaintiff] is "unable to secure and follow a substantially gainful occupation due to disability" is an opinion that, if accepted, would be dispositive of the claim and, thus, reserved to the Commissioner. Opinions on issues reserved to the Commissioner can never be entitled to controlling weight or special significance. The Decision Review Board concurs with and adopts the Administrative Law Judge's findings with respect to the evaluation of the medical evidence and the [plaintiff's] residual functional capacity.

*Id*. at 497 (citations omitted).

The DRB notified the plaintiff that its post-remand decision was the final determination of the commissioner. *Id*. at 493; 20 C.F.R. § 405.450(a); *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).[2]

---

[2] On March 8, 2011, I held a teleconference with counsel to discuss a potential jurisdictional issue that appeared in the plaintiff's recitation of the procedural history of his claim in his statement of errors. *See* Report of Hearing and Order re: Status ("Report") (Docket No. 15). The plaintiff had stated that (i) on remand, the case had been sent both to the DRB and to an administrative law judge for a rehearing, (ii) after the DRB's unfavorable decision, the administrative law judge to whom the case had been assigned on remand dismissed it without a hearing, citing the adverse DRB decision, (iii) the plaintiff appealed the administrative law judge's dismissal, and (iv) that appeal was still pending before the DRB. *See* Plaintiff's Itemized Statement of Specific Errors ("Statement of Errors") (Docket No. 8) at 2. Counsel for the commissioner informed me, during the March 8 teleconference, that the regional legal staff of the Social Security Administration had decided to recommend that the commissioner seek a voluntary
*(continued on next page)*

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. § 405.101 (incorporating 20 C.F.R. § 404.1520(g)); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff's statement of errors also implicates Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work

---

remand of the case. *See* Report at 1. At oral argument, counsel for the commissioner confirmed that, to the best of his knowledge, the recommendation of a voluntary remand had not been accepted. Counsel for both sides agreed that, although the plaintiff's appeal of the administrative law judge's dismissal remains pending before the DRB, that appeal, which both sides expect to be unsuccessful, has no impact on the appeal of the instant DRB decision, which the DRB itself characterized as the "final decision" of the commissioner. Record at 493.

even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

## I. Discussion

The plaintiff seeks reversal and remand on the bases that (i) the DRB erred in giving little weight to his March 1994 VA disability pension award, and (ii) the administrative law judge failed to adequately assess his hearing impairment at Step 2. *See* Plaintiff's Itemized Statement of Specific Errors ("Statement of Errors") (Docket No. 8) at 3-14. I find no reversible error and, hence, recommend that the decision be affirmed.

### A. Weight Given to VA Disability Determination

This court has held that VA disability decisions are entitled to "some weight" in adjudicating Social Security disability claims. *See, e.g., Pinkham ex rel. Pinkham v. Barnhart*, No. 03-116-B-W, 2004 WL 413306, at *4 (D. Me. Mar. 3, 2004) (rec. dec., *aff'd* Apr. 5, 2004) ("While a determination by another government agency that a claimant is disabled is not binding on the commissioner, 20 C.F.R. § 404.1504, every federal court of appeals that has considered the issue has held that a determination of disability made by the Veterans' Administration is entitled to some weight in determining a claim for Social Security benefits.") (citing, *inter alia*, *McCartey v. Massanari*, 298 F.3d 1072, 1075 (9th Cir. 2002)). Even so, "[b]ecause the VA and SSA criteria for determining disability are not identical, . . . the ALJ may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." *McCartey*, 298 F.3d at 1076.

#### 1. Plaintiff's Contentions

The plaintiff argues that the DRB failed to give persuasive, specific, valid reasons for according little weight to his VA disability decision in that:

5

1. The DRB, like the administrative law judge, improperly interpreted raw medical evidence in failing to find severe orthopedic impairments prior to the plaintiff's date last insured. *See* Statement of Errors at 5-7. Although the DRB noted that the plaintiff had suffered a right shoulder injury in May 1982 and a back injury in December 1990, as confirmed by diagnostic imaging, it made no assessment of the significance of those findings despite (i) the plaintiff's hearing testimony that, prior to his date last insured, his back injury had limited his ability to lift and carry and his shoulder injury had lessened the grip strength in his hand, and (ii) the assessment of a treating physician, Allen J. Jervey, M.D., that the plaintiff was limited to lifting only 10 pounds, sitting less than six hours per day, and only occasional reaching. *See id.* at 5-6. The assessment of Disability Determination Services ("DDS") nonexamining consultant Lawrence P. Johnson, M.D., cannot stand as substantial evidence of failure to establish severe orthopedic impairments because Dr. Johnson did not mention the orthopedic impairments or assess their severity. *See id.* at [6].

2. The DRB, like the administrative law judge, improperly interpreted raw medical evidence in assessing the significance of the plaintiff's asthma prior to his date last insured. *See id.* at [6]-7. The DRB, for example, failed to recognize that, although October 1997 pulmonary function testing indicated significant improvement in lung capacity after using a bronchodilator, the plaintiff's FEV1 deficiency still exceeded the criteria of Listing 3.02, Appendix 1 to Subpart P, 20 C.F.R. § 404 (the "Listings"). *See id.* at 7.

3. No expert opinion of record supports the administrative law judge's RFC finding, affirmed by the DRB. *See id.* at 8. Dr. Johnson found insufficient evidence to make an assessment, and Dr. Jervey deemed the plaintiff capable of less than sedentary level work. *See id.* The administrative law judge wrongly concluded that the physical RFC opinion of Dr. Jervey

6

and the mental RFC opinion of a second treating physician, psychiatrist Marcia Smolin, D.O., covered the period prior to the plaintiff's date last insured without recontacting those treating physicians to clarify the ambiguity. *See id*. at 8-10.[3]

### 2. DRB's Treatment of VA Disability Decision

I find no error in the assignment of little weight to the VA disability decision. The DRB supportably concluded that (i) the VA had supplied "very limited rationale" for its decision and, (ii) after reviewing the same underlying medical information relied upon the VA, the administrative law judge made findings supported by substantial evidence that the plaintiff did not qualify for disability under the commissioner's different standards.

#### a. VA's Limited Rationale

The DRB supportably characterized the VA's rationale as "very limited[.]" Record at 497. The VA's rationale, in its entirety, consisted of one conclusory statement: "The evidence shows the veteran is unable to secure and follow a substantially gainful occupation due to disability." *Id*. at 140.

#### b. Assessment of Evidence Reviewed by VA

The DRB also supportably accorded little weight to the VA decision on the ground that the administrative law judge, after reviewing the same evidence available to the DRB, reasonably concluded that this evidence did not demonstrate disability pursuant to the commissioner's sequential evaluation process.

---

[3] The plaintiff raises, in passing, two points that are sufficiently skeletal to be deemed waived: that the administrative law judge (i) made an invalid Step 3 (Listings) finding and (ii) committed reversible error in failing to consider the plaintiff's impairments in combination. *See* Statement of Errors at 10-11; *De Araujo v. Gonzáles,* 457 F.3d 146, 153 (1st Cir. 2006) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (citation and internal quotation marks omitted).

### i. Back and Shoulder Impairments

As a threshold matter, the DRB did not err in affirming the administrative law judge's finding, *see id.* at 7, that the medical evidence did not demonstrate that the plaintiff's shoulder and back impairments significantly limited his functioning for at least 12 months beginning prior to his date last insured. The plaintiff points to no contemporaneous medical evidence indicating that his functioning was restricted by these impairments prior to his date last insured. *See* Statement of Errors at 5-6. Dr. Johnson concluded that he had submitted insufficient medical evidence to evaluate his claim before his date last insured. *See* Record at 336.

As counsel for the commissioner pointed out at oral argument, the standard RFC form that Dr. Johnson completed instructs nonexamining DDS consultants to base their conclusions on "all evidence" in the file. *See id.* at 329. Although Dr. Johnson did not list, in his notes, the shoulder and back diagnostic imaging relied upon by the VA, *see id.* at 336, the plaintiff does not contend that this evidence was not part of the file as of the time of Dr. Johnson's review. In response to the commissioner's counsel's argument, the plaintiff's counsel identified no authority for the proposition that a nonexamining consultant must list all evidence reviewed or, conversely, that he or she should be presumed not to have reviewed available evidence unless expressly noted or listed. Instead, as counsel for the commissioner persuasively argued, the language of the standardized form suggests that a nonexamining consultant should be presumed to have reviewed all then-available file evidence absent an indication otherwise. In these circumstances, Dr. Johnson's RFC opinion stands as substantial evidence that the plaintiff failed to adduce sufficient evidence to evaluate his claimed back and shoulder conditions prior to his date last insured. *See Rose v. Shalala,* 34 F.3d 13, 18 (1st Cir. 1994) ("[T]he amount of weight that can properly be given the conclusions of non-testifying, nonexamining physicians will vary

with the circumstances, including the nature of the illness and the information provided the expert. In some cases, written reports submitted by non-testifying, non-examining physicians cannot alone constitute substantial evidence, although this is not an ironclad rule.") (citations and internal quotation marks omitted).

To the extent that Dr. Jervey assessed limitations flowing from the plaintiff's back and/or shoulder impairments, the administrative law judge supportably determined that his opinion pertained to the plaintiff's condition as of the opinion's date, March 20, 2007, rather than to his condition prior to his date last insured of December 31, 1994. *See id*. at 8. The Jervey opinion indicates on its face that it reflects the plaintiff's then-current condition. *See id*. at 337-40. Dr. Jervey answered questions phrased in the present tense, for example, "Are **LIFTING/CARRYING** affected by the impairment?" *Id*. at 337 (emphasis in original). In responding, Dr. Jervey himself employed the present tense, stating, for example: "Needs glasses[.] Needs hearing aid[.]" *Id*. at 339.

The administrative law judge committed no error in failing to recontact Drs. Jervey or Smolin for clarification as to whether their 2007 opinions related to the plaintiff's condition in 1994. Pursuant to Social Security Ruling 96-5p ("SSR 96-5p"), an adjudicator must recontact a treating source when (i) "the evidence does not support a treating source's opinion" on any issue reserved to the commissioner and (ii) "the adjudicator cannot ascertain the basis of the opinion from the case record[.]" SSR 96-5p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2011), at 127; *see also* 20 C.F.R. § 404.1512(e)(1) (commissioner "will seek additional evidence or clarification from [a claimant's] medical source when the report from [a claimant's] medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on

9

medically acceptable clinical and laboratory diagnostic techniques"). That was not the case here. The administrative law judge ascertained from the face of the Jervey and Smolin RFC opinions that they addressed the plaintiff's condition as of 2007, not as of 1994. *See* Record at 337-40 (Jervey opinion), 341-42 (Smolin opinion). There was no ambiguity on that point and, hence, no need to seek clarification.[4]

With respect to the plaintiff's own testimony concerning functional restrictions stemming from his shoulder and back condition prior to his date last insured, the administrative law judge discredited the plaintiff's statements to the extent inconsistent with the assessed RFC. *See id*. at 8. The plaintiff offers no persuasive reason to disturb that credibility finding. *See* Statement of Errors at [6].

The finding of non-severe back and shoulder impairments, hence, was supported by substantial evidence.

### ii. Asthma Impairment

Counsel for the commissioner contended at oral argument that, even assuming *arguendo* that the administrative law judge and the DRB erred in their handling of his asthma impairment, there is no identifiable resulting harm. I agree.

Both the DRB and the administrative law judge took into account the plaintiff's asthma condition, deemed it severe, and found it to impose the functional restriction that he could not work in concentrated exposure to excessive levels of respiratory irritants such as dust, odors, and

---

[4] The plaintiff also cited *Soto-Cedeño v. Astrue*, 380 Fed. Appx. 1 (1st Cir. 2010), for the proposition that the administrative law judge erred in failing to recontact Drs. Jervey and Smolin for clarification as to the period with respect to which their RFC opinions pertained. *See* Statement of Errors at 9-10. *Soto-Cedeño* is distinguishable. In that case, an administrative law judge deemed a treating source report inadequately supported because of the absence of treatment notes, even though the source had explained the basis for his opinion. *Soto-Cedeño*, 380 Fed. Appx. at 3. The First Circuit concluded that this was error and noted, in relevant part, that to the extent that the administrative law judge deemed the report "inadequate," he should have first recontacted the treating source pursuant to 20 C.F.R. § 404.1512(e)(1). *Id*. Here, the administrative law judge reasonably concluded that it was clear from the face of the RFC opinions in question that they addressed the plaintiff's condition in 2007, not in 1994.

dampness. *See* Finding 5, Record at 7; Finding 3, *id*. at 498. To the extent that the plaintiff means to suggest that his asthma should have been found at Step 3 to meet or equal a listing, he fails to explain how. *See* Statement of Errors at 7, 10. To the extent that he means to suggest that, in assessing his RFC, the administrative law judge omitted functional restrictions stemming from his asthma, he points to none. *See id*. at 7-8.[5] Any error in the assessment of the plaintiff's asthma accordingly was harmless.

### iii. Determination of RFC From Raw Medical Evidence

The plaintiff finally suggests that the administrative law judge committed reversible error in crafting an RFC from the raw medical evidence presented to the VA, an error that the DRB failed to correct. *See* Statement of Errors at 7-8; *see also, e.g., Gordils v. Secretary of Health & Human Servs*., 921 F.2d 327, 329 (1st Cir. 1990) (although administrative law judges are not precluded from "rendering common-sense judgments about functional capacity based on medical findings," they are "not qualified to assess residual functional capacity based on a bare medical record").

At oral argument, counsel for the commissioner did not dispute that the administrative law judge eschewed reliance on the RFC opinions of the plaintiff's treating physicians, Drs. Jervey and Smolin, and did not expressly rely on the RFC opinion of the DDS consultant, Dr. Johnson, in making his RFC finding. He did not argue that the findings at issue permissibly could have been made by a layperson on a common-sense basis. Nonetheless, he (i) suggested that the administrative law judge implicitly relied on the Johnson RFC opinion and (ii) argued that, in any event, this case fits within an exception recognized by this court when an

---

[5] In any event, the administrative law judge's RFC finding is largely consistent with the 2007 opinion of Dr. Jervey that the plaintiff required limited exposure to temperature extremes, dust, humidity/wetness, and fumes, odors, chemicals, and gases. *Compare* Finding 5, Record at 7 *with id*. at 340.

11

administrative law judge gives a claimant the "benefit of the doubt." For the latter proposition he cited *MacFarlane v. Astrue*, No. 07-132-P-H, 2008 WL 660225 (D. Me. Mar. 5, 2008) (rec. dec., *aff'd* Apr. 1, 2008). *See MacFarlane*, 2008 WL 660225, at *4 (in case in which administrative law judge discussed his reasons for discounting the claimant's testimony as to his degree of limitation, noted that the state agency reviewers had concluded that the claimant had no severe physical impairments as of the relevant time, and stated that he would give the claimant the benefit of the doubt by finding that his physical impairments possibly limited him to light work as of the relevant time, any error could "only be harmless as it was obviously more favorable to the plaintiff than would be the implied alternative finding that the plaintiff in fact did not suffer from any severe physical impairments or limitations").

I agree that, in the circumstances of this case, any error is harmless. As stated *supra*, the administrative law judge reasonably judged the Jervey and Smolin RFC opinions to relate to the plaintiff's condition in 2007 rather than 1994. Only one expert, Dr. Johnson, considered the plaintiff's condition as of his date last insured, finding insufficient evidence to evaluate the claim as of that time. As discussed *supra*, while Dr. Johnson did not list all evidence of record, *see* Record at 336, he was directed to consider all such evidence, *see id*. at 329, and there is no reason to believe that he did not have access to the available medical records predating and immediately postdating the plaintiff's date last insured. The administrative law judge evidently implicitly credited in part the Johnson RFC opinion to the extent that it bore on the plaintiff's back, shoulder, and hearing impairments as of his date last insured. *See id*. at 7 ("There is no contemporaneous evidence regarding a restriction of the [plaintiff's] ability to engage in basic work-related physical and mental activities prior to 1995 due to visual, hearing, or musculoskeletal impairments.").

As discussed *supra*, to the extent that the administrative law judge rejected Dr. Johnson's RFC finding with respect to asthma and found that the plaintiff had demonstrated that the condition was severe prior to his date last insured, the plaintiff identifies no restrictions omitted as a result. To the extent that the administrative law judge found the plaintiff limited to medium-level exertional work, he can only have done so because he credited in part the plaintiff's testimony, *see id*. at 8, that is, gave him the benefit of the doubt, despite supportably determining that he had failed to establish the existence of severe musculoskeletal impairments prior to his date last insured. With respect to this limitation, as in *MacFarlane*, any error in crafting a functional restriction from the raw medical evidence was harmless.

### 3. Finding of Non-Severe Hearing Impairment

The plaintiff finally faults the administrative law judge's finding at Step 2, adopted without analysis by the DRB, that his hearing impairment was non-severe as of his date last insured. *See* Statement of Errors at 11-14. He complains that the administrative law judge impermissibly interpreted raw medical evidence, giving undue weight to a portion of a 1993 hearing test demonstrating 100 percent word recognition while ignoring portions that corroborated high-frequency hearing loss and characterized that condition as "severe." *Id*. at 12; *see also* Record at 174-75. He adds that the administrative law judge failed to make even a rudimentary assessment of his functional hearing loss, ignoring his statement that, even with hearing aids, he still could not hear bells, timers, telephones, or television. *See* Statement of Errors at 13; *see also* Record at 135. He argues that, to the extent the administrative law judge relied on Dr. Johnson's finding of insufficient evidence to assess his impairments as of his date last insured, that reliance was misplaced with respect to his hearing impairment, since Dr.

Johnson failed to note the 1993 hearing test and listed only audiological records from November and December 1998. *See* Statement of Errors at 12; *see also* Record at 336.

At oral argument, counsel for the commissioner contended that Dr. Johnson's RFC opinion does stand as substantial evidence of the plaintiff's failure to establish a severe hearing impairment as of his date last insured because Dr. Johnson presumably reviewed the complete record then available, including the 1993 hearing test results. In any event, he argued, the administrative law judge gave due consideration to the claimed hearing impairment, expressly considering the 1993 test results.

For the reasons discussed *supra*, I agree that Dr. Johnson's RFC opinion stands as substantial evidence of failure to establish a severe hearing impairment as of the plaintiff's date last insured. In any event, the plaintiff fails to make a persuasive case that the administrative law judge or the DRB erred in so concluding. Although the audiological examiner did state in 1993, in response to a request to indicate the severity and effect on the plaintiff's daily life of his tinnitus, that the condition was "severe," she did not describe its effect on his daily life. *See id*. at 175. The plaintiff relies on his report, in an undated Disability Report – Appeal, that he had severe hearing loss, including an inability to hear bells, timers, telephones, television, and other noises, even with his hearing aids. *See id*. at 135. However, it is not clear that this degree of hearing loss existed prior to his date last insured or, if it did, how it had more than a slight impact on his ability to perform basic work-related functions, particularly in view of the lack of any impact on word recognition. The plaintiff takes nothing from this argument.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

## NOTICE

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the district court and to appeal the district court's order.*

Dated this 7th day of July, 2011.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge